UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK ANTHONY DESPAIN,

    Plaintiff                               Civil Action No.  13-14378

v.                                             HON.  ROBERT H. CLELAND
                                              U.S. District Judge
                                              HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL          U.S. Magistrate Judge
SECURITY,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Mark Anthony Despain ("Plaintiff") brings this action under 42 U.S.C. § 405(g) challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below,  I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

## PROCEDURAL HISTORY

On April 11, 2011, Plaintiff filed applications for SSI and DIB, alleging an onset of disability date of April 1, 2005 (Tr. 158-164, 165-173). After the initial denial of the claim, Plaintiff filed a  request for an administrative hearing, held on April 12, 2012 in Flint, Michigan before Administrative Law Judge ("ALJ") Kevin W. Fallis (Tr. 35).  Plaintiff,

represented by attorney David M. Stewart, testified, as did Vocational Expert ("VE") Mary Williams (Tr. 41-70, 71-77). On June 29, 2012, ALJ Fallis found Plaintiff not disabled (Tr. 30). On August 15, 2013, the Appeals Council denied review (Tr. 1-5). Plaintiff filed for judicial review of the final decision in this Court on October 17, 2013.

## BACKGROUND FACTS

Plaintiff, born May 12, 1968, was 46 when the ALJ issued his decision (Tr. 30, 158). Hi completed 12th grade and worked previously as a clerk, "driver/manager," lift operator, and maintenance worker (Tr. 203). He alleges disability as a result of degenerative joint disease, osteoporosis, and neuropathy (Tr. 202).

**A. Plaintiff's Testimony**

*Plaintiff's counsel prefaced his client's testimony by noting a recent diagnosis of congestive heart failure* (Tr. 39). *He stated that Plaintiff was scheduled for an upcoming CT study and would be submitting additional records* (Tr. 39-40).

Plaintiff offered the following testimony:

He lived in a second floor apartment in Flint, Michigan (Tr. 41). He had gained 10 pounds in the past two months due to fluid retention (Tr. 42). He was required to climb about 17 steps to access his second floor unit, but tried to avoid climbing stairs more than once a day (Tr. 42). He experienced shortness of breath and lower extremity pain while climbing the stairs (Tr. 43). His driver's license had been suspended the previous year "for points," and he was required to rely on friends and family for transportation (Tr. 43-44). He denied vocational training or military service (Tr. 44).

Plaintiff last worked full time as a chair lift operator at a local ski resort (Tr. 45). His work following the chair lift stint was limited to a part-time job as a gas station clerk (Tr. 45). He was currently receiving medical treatment and took prescribed medication as directed (Tr.

46). His pain medication created the side effect of "a little" light-headedness and nausea (Tr. 46). He generally avoided nausea by taking the medication with meals (Tr. 46-47).

As a result of degenerative joint disease of the cervical spine, he experienced gradually worsening neck and right shoulder pain and "pins and needles" in the right arm and fingers (Tr. 47-48). In the past two months, he had begun experiencing lower extremity edema (Tr. 48-49). He generally elevated his legs above his heart while sitting, as recommended by his physician (Tr. 50). His pain medication caused sleep disturbances that prevented him from sleeping more than four to six hours each night (Tr. 50-52). As a result of sleep disturbances, he took at least one two-hour nap every day (Tr. 52). He spent 75 percent of his waking hours in a recliner (Tr. 54). He was unable to lift more than one gallon of milk (Tr. 53). Prolonged sitting caused neck and shoulder pain (Tr. 53). He was unable to stand for more than 15 minutes and was not sure how long he could walk (Tr. 54). Right upper extremity pain caused limitations in gripping (Tr. 54-55). In addition to the limitations on the right, Plaintiff's ability to lift with the left arm was hindered by an old left clavicle fracture (Tr. 55). Lifting with the left arm also caused neck pain (Tr. 55).

Plaintiff did not cook and relied on his mother to bring him prepared food (Tr. 55). His mother also performed all his laundry chores, but he was able to wash dishes (Tr. 56). He lacked the energy to wash a sink full of dishes at one time (Tr. 57, 69). He was able to vacuum his apartment (Tr. 57). His mother shopped for groceries (Tr. 57). He did not shop more than once a month, adding that when he shopped, he was accompanied by his mother and bought only a few items (Tr. 57-58). He was able to take out the trash, but experienced difficulty shaving (Tr. 58). He did not own a computer and spent most of his day reading and watching television (Tr. 58). He experienced difficulty following the plot line in television shows (Tr. 59). His social activity was limited to eating out with his mother on days he had

doctors appointments (Tr. 59). He had a 19-year-old daughter with whom he had minimal contact (Tr. 61). As a result of his physical problems, he no longer played tennis or darts (Tr. 60-61). He did not smoke and did not drink more than once a month (Tr. 62). In response to the ALJ's statement that July and October, 2011 treating records referenced "severe drinking of alcohol," he denied drinking heavily on a regular basis (Tr. 62-64). Plaintiff had 1993 and 2003 DUI convictions (Tr. 63). He had not smoked marijuana since April, 2005 (Tr. 64).

In response to questioning by his attorney, Plaintiff reported that he experienced significant limitations in overhead reaching on the right (Tr. 65). He stated that he was required to keep his legs elevated while sitting due to both edema and back and shoulder pain (Tr. 66). He reported headaches several times a week which he coped with by taking Ibuprofen and lying down (Tr. 66). Plaintiff indicated that symptoms of asthma had resolved but he experienced environmental allergies requiring the daily use of antihistamines (Tr. 68). He was unable to afford treatment by an allergy specialist (Tr. 69).

B.     **Medical Evidence**[1]

### 1. Treating Records

A February, 2000 imaging study of the right shoulder showed unremarkable results (Tr. 253). In September, 2005, Josetta Tharippeal, M.D. noted that Plaintiff's left clavicular condition was improving (Tr. 265). In October, 2007, Dr. Tharippeal noted Plaintiff's report of intermittent left shoulder pain as a result of a previous injury (Tr. 265). She observed "no tenderness or any pain on movement" (Tr. 265). In February, 2008, Plaintiff sought

---

[1] Records predating the April 1, 2005 alleged onset of disability, where relevant, are included for background purposes only.

-4-

emergency treatment for neck pain (Tr. 254-260).  Upon discharge, he was prescribed Tylenol #3 (Tr. 258).  The same month, Dr. Tharippeal noted Plaintiff's report of intermittent neck pain (Tr. 264).  A March, 2010 x-ray of the cervical spine showed mild encroachment of the disc space at C5-6 and C6-7 (Tr. 328).  In November, 2010, Plaintiff reported constant neck pain and a reduced range of right upper extremity motion (Tr. 294, 315).  Treating notes from the next month state that Plaintiff was currently clearing snow "for a living" (Tr. 292, 313).  Plaintiff reported daily alcohol use (Tr. 292, 313).

In January, 2011, cardiologist Samir Elian, M.D. performed a cardiac consultation, noting that Plaintiff had "no known medical problems" (Tr. 301).  Plaintiff reported "intermittent palpitations and atypical chest pain" but no shortness of breath or lightheadedness (Tr. 301).  Dr. Elian noted that Plaintiff was "[r]emarkable for significant alcohol abuse" (Tr. 301, 331).  He diagnosed Plaintiff with a "probable mitral valve prolapse" (Tr. 302, 332).  An echocardiogram was unremarkable (Tr. 300).  Plaintiff admitted to a treating source that he had recently consumed six beers in one sitting (Tr. 312).

The following month, Plaintiff reported difficulty swallowing (Tr. 288).  In April, 2011, rehabilitation specialist Kavitha Reddy, M.D. examined Plaintiff, noting 5/5 strength in the upper extremities (Tr. 277).  Plaintiff exhibited right shoulder tenderness (Tr. 277).  Dr. Reddy recommended physical therapy, stretching, and followup xrays and a cervical MRI (Tr. 277).  She noted that she would consider administering steroid injections (Tr. 277).  The following month, Plaintiff reported drinking one beer a day despite the daily use of Vicodin (Tr. 283, 286-287).  An x-ray of the right shoulder was unremarkable (Tr. 357).

In June, 2011, Plaintiff reported drinking four beers each day (Tr. 306).  The same month, Dr. Reddy recommended an MRI of the right shoulder and cervical spine (Tr. 340).  The following month, an MRI of the cervical spine showed multilevel degenerative disc

disease with disc height loss but "well-preserved" alignment (Tr. 343-344, 396-397). Treating notes from the same month and August, 2011 state that Plaintiff was drinking four or more beers each day (Tr. 355, 378). The same month, he exhibited swollen feet and ankles (Tr. 381).

In September, 2011, rehabilitation specialist Richard J. Kovan, M.D. recommended steroid injections after viewing the MRI of the cervical spine (Tr. 360, 369). The same month, gastroenterologist Muhammad Al-Midani, M.D. noted Plaintiff's report of difficulty swallowing[2] (Tr. 365). Dr. Al-Midani observed that Plaintiff demonstrated a normal gait and range of motion, along with equal strength in the bilateral upper and lower extremities (Tr. 365). Citing studies performed the previous month, Dr. AL-Midani found that Plaintiff experienced "severe narrowing of the . . . esophagus" (Tr. 365, 398). He recommended botox injections (Tr. 365, 398)). October, 2011 treating notes list "alcohol abuse," shoulder pain, and degenerative disc disease as Plaintiff's health concerns (Tr. 373-374).

In April, 2012, Plaintiff sought emergency treatment for swelling of the feet and ankles (Tr. 400). Standard discharge recommendations included "leg elevation" and elevating the legs "above the level of the heart, while lying down" (Tr. 402). An ultrasound of the lower extremities was negative for deep venous thrombosis (Tr. 407-408). The following month, an ultrasound of the abdomen showed evidence of fatty infiltration and/or hepatocellular disease" (Tr. 412).

### 2. Non-Treating Records

In April, 2008, Abdullah Raffee, M.D. performed a consultative physical examination on behalf of the SSA, noting Plaintiff's report of radiating neck pain and upper extremity

---

[2]Difficulty swallowing is referred to as "dysphagia" (Tr. 398).

numbness (Tr. 267). Dr. Raffee observed that Plaintiff had a normal gait and was able to move "quite easily" from a chair to the examining table (Tr. 268). Plaintiff appeared "well developed" and "well nourished" (Tr. 268). Dr. Raffee observed "some spasm of the neck on flexion," noting that "[i]t is only in extension that he seems to be having a problem and this is limited" (Tr. 269). He recommended an EMG, x-rays, and an MRI of the cervical spine (Tr. 269). He diagnosed Plaintiff with radiculopathy of "undetermined" etiology (Tr. 269). Plaintiff did not exhibit problems with manipulative activities except for a "limited" ability to pull (Tr. 270).

### 3. Material Submitted After the June 29, 2012 Administrative Decision[3]

June 4, 2012 treating records show that Plaintiff was advised to elevate his feet while sitting (Tr. 413).

### C. Vocational Expert Testimony

VE Mary Williams classified Plaintiff's past relevant work as a lift operator as exertionally light and unskilled and work as a warehouse manager, medium/skilled[4] (Tr. 72). The ALJ then described a hypothetical individual of Plaintiff's age, educational level, and work experience:

> [T]his individual would be able to perform work at the light level, which is lift up to 20 pounds occasionally, lift, carry up to 10 pounds frequently; stand, walk, for about six hours, and sit for up to six hours in an eight-hour workday

---

[3]This record was not considered by the ALJ (Tr. 1-2, 4, 413).

[4]
20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

with normal breaks. This individual can occasionally perform pushing or pulling. They could never climb ladders, ropes, or scaffolds. They could occasionally climb ramps or stairs, occasionally balance, stoop, kneel, crouch and crawl. this individual could occasionally perform overhead reaching. They could perform frequent handling of objects and fingering with the right upper extremity. They would have to avoid all exposure to excessive vibration. They would have to avoid concentrated exposure to environmental irritants, such as fumes, odors, dusts and gases. They would have to avoid all use of hazardous moving machinery, avoid all exposure to unprotected heights. Additionally, the work would be limited to simple, routine, repetitive tasks performed in a work environment free of fast-paced production requirements involving only simple work-related decisions and routine workplace changes. (Tr. 74-75).

The VE testified that the above-limited individual could not perform any of Plaintiff's past relevant work, but could perform the light, unskilled work of an inspector (5,800 positions in the State of Michigan); packer (9,200) and assembler (10,000) (Tr. 75). The VE testified further that if the same individual were limited to sedentary work, he could perform the work of a surveillance system monitor (400); credit clerk (300); and information clerk (2,400) (Tr. 76). The VE testified that the need to be off task for 20 percent of the work day, or, the need to miss two days of work each month due to "doctor visits, symptoms," or medication side effects, would preclude all work (Tr. 76).

In response to questioning by Plaintiff's counsel, the VE testified that the need to elevate the legs more than six to eight inches would preclude all employment (Tr. 77).

**D. The ALJ's Decision**

Citing the medical records, ALJ Fallis determined that Plaintiff experienced the severe impairments of "degenerative joint disease, degenerative disc disease, osteoarthritis, chronic pain, liver disease, dysphagia, coronary artery disease, a depressive disorder and an anxiety disorder" but that none of the conditions met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 24). He found that Plaintiff experienced mild restriction in activities of daily living and social functioning and moderate difficulties in

concentration, persistence, or pace (Tr. 24). He found that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following restrictions:

> [O]ccasional pushing and pulling; no climbing of ladders, ropes or scaffolds; occasional climbing of ramps or stairs; occasional balancing, stooping, kneeling, crouching and crawling; occasional overhead reaching; frequent handling of objects . . . and frequent fingering . . . with the right upper extremity; must avoid all exposure to excessive vibration; must avoid concentrated exposure to environment[al] irritants such as fumes, odors, dusts and gases; must avoid all use of hazardous moving machinery; must avoid all exposure to unprotected heights. Due to pain and the side effects of medications, work is limited to simple, routine and repetitive tasks performed in a work environment free of fast-paced production requirements involving only simple work-related decision and routine work place changes (Tr. 25).

Citing the VE's testimony, the ALJ found that although Plaintiff was unable to perform his former work, he could work as an inspector, packer, or assembler (Tr. 28-29).

The ALJ discounted Plaintiff's allegations of disability, citing an MRI of the cervical spine showing the absence of nerve root impingement and an unremarkable imaging study of the right shoulder (Tr. 27-28). The ALJ noted that Plaintiff had not sought treatment for depression or anxiety (Tr. 28). He concluded that Plaintiff's liver problems were attributable to alcohol abuse (Tr. 28). He noted that none of the treating sources had advised Plaintiff to elevate his legs, adding that although Plaintiff sought emergency treatment for lower extremity swelling, "there is no indication" that the condition was "chronic" (Tr. 28).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less than a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,*

305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## **ANALYSIS**

### A.  Substantial Evidence Supports the ALJ's Determination

Plaintiff argues that the administrative decision contains a number of factual errors. *Plaintiff's Brief,* 1-3, *Docket #9.*  First, he faults the ALJ's statement that a July, 2011 MRI of the cervical spine showed "no evidence of stenosis or spinal cord abnormality." *Id.* at 1-2 (citing Tr. 28, 343-344).  Plaintiff points out that in fact, the MRI showed degenerative disc disease and neuroforaminal narrowing at multiple levels.  *Id.* at 1.

The ALJ's summation of the MRI report does not amount to a distortion of the record (Tr. 28).  The finding that Plaintiff did not experience stenosis or nerve root impingement (no "spinal cord signal abnormality") is drawn directly from the report (Tr. 343-344).  While Plaintiff is correct that the report also noted the presence of degenerative disc disease, the ALJ acknowledged the condition at Step Two of his analysis by including the condition among the "severe" impairments (Tr. 24).  The RFC limiting Plaintiff to 20 pounds lifting, occasional overhead reaching, avoidance of excessive vibration and a preclusion on all rope, ladder, or scaffold climbing adequately addressed Plaintiff's limitations as a result of degenerative joint disease of the cervical spine (Tr. 25).   Further, the ALJ did not err by citing only a portion of the MRI report.  "While it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each . . . opinion, it is well settled that 'an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party."  *Kornecky v. Commissioner of Social Security,*  2006 WL 305648, *8-9 (6th Cir. February 9, 2006)(*citing Loral Defense Systems-Akron v. N.L.R.B.,* 200 F.3d 436, 453 (6th Cir.1999)).

Second, Plaintiff contends that the ALJ erroneously concluded that Plaintiff did not

raise the issue of shoulder pain until submitting the pre-hearing brief. *Plaintiff's Brief* at 2 (citing Tr. 26). He contends that the ALJ's finding stands at odds with Dr. Rafee's April 15, 2008 report noting complaints of shoulder pain. *Id.* (citing Tr.267). However, the ALJ did not err in noting that the original basis for disability did not include shoulder problems. Plaintiff's application for benefits states that he was disabled as a result of degenerative joint disease, osteoporosis, and neuropathy (Tr. 202). The fact that Plaintiff reported shoulder pain to various treating sources and a consultative source would not by itself provide notice that he was alleging disability due to the condition. Nonetheless, the ALJ credited Plaintiff's allegations of shoulder pain by crafting an RFC restricting manipulative functioning including overhead reaching (Tr. 25). While Plaintiff notes that Dr. Rafee recommended followup imaging studies to determine the cause of the alleged neck and shoulder pain, the ALJ noted that the later x-rays and MRI undermined, rather than supported the professed degree of limitation. (Tr. 27, 343-344, 357).

The ALJ's inference that Plaintiff ramped up the disability claim with allegations of shoulder pain, a heart condition, and depression and anxiety as the hearing date approached is not unreasonable. While Plaintiff's counsel stated at the hearing that Plaintiff had received a diagnosis of congestive heart failure, none of the objective studies or treatment notes suggest that Plaintiff's heart condition was disabling (Tr. 39-40). In January, 2011, cardiologist Dr. Elian observed that Plaintiff had "no known medical problems" aside from the symptoms of occasional palpations and chest pain (Tr. 301-302). Likewise, the treating records do not contain reference to mental health treatment and consistently state that Plaintiff appeared psychologically unremarkable. Plaintiff's overlapping argument that the ALJ erroneously referred to an imaging study of the right shoulder as an "MRI" rather than x-ray does not provide grounds for remand. *Plaintiff's Brief* at 2. While the ALJ

erroneously stated that the imaging study was an MRI (Tr. 28), he correctly referred to the May, 2011 imaging study as an "x-ray" elsewhere in the opinion (Tr. 27, 357). Further, he did not err in noting that the x-ray showed unremarkable results (Tr. 27).

In his third argument, Plaintiff takes issue with the finding that none of the physicians advised him "to elevate his legs." *Plaintiff's Brief* at 2-3 (citing Tr. 28). However, the ALJ is correct that the treating records submitted prior to the administrative decision do not support the alleged need for leg or foot elevation. Plaintiff argues that the need to elevate his swollen legs "is such common knowledge that the [ALJ] could take judicial notice of the fact . . ." *Id.* at 3. Plaintiff cites preprinted, generalized recommendations for treating edema given to Plaintiff during an emergency room visit (Tr. 402). He also cites June 4, 2012 treating notes recommending that Plaintiff should elevate his legs while sitting (Tr. 413).

None of these contentions provide a basis for remand. First, my own review of the medical records at the time of the ALJ's review confirms the finding that the medical transcript did not contain any recommendations (aside from the generalized instructions given to Plaintiff in the emergency room) for leg or foot elevation (Tr. 28). Second, while Plaintiff argues that common sense would dictate the need to elevate swollen legs, the actual question is whether he has shown that he actually experienced chronic edema justifying leg elevation. While August, 2011 and April, 2012 records note foot swelling, the ALJ concluded correctly that these records did not establish that the condition was chronic or was not treatable with medication (Tr. 28). Although Plaintiff claimed that his physician recommended elevating the legs "above the heart," none of the records state such limitations were required (Tr. 50). Notably, the standardized "edema" recommendations given to Plaintiff state only that the legs should be elevated above the heart "while *lying down*" (Tr. 402)(emphasis added).

Plaintiff cites June 4, 2012 treating notes stating the need for foot elevation (Tr. 413). However, this record was not submitted until long after the ALJ issued the June 29, 2012 decision(Tr. 1-5). Pursuant to the sixth sentence of 42 U.S.C. 404(g), material submitted after the administrative decision is subject to a narrow review by the district court. *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir.1993). To establish grounds for remand based on such material, the claimant must show that the "new evidence is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." § 405(g).

Plaintiff has not offered good cause for the tardy submission of this material despite the fact it was created over three weeks before the administrative decision was issued. Further, Plaintiff appears to have submitted the record as a rebuttal to the ALJ's finding that none of the physicians found a need for leg elevation. However, "good cause contemplates more than strategic delay, or sandbagging, of evidence and more than simple miscalculation of the necessity of producing such evidence in the first instance to establish a claim of disability." *Haney v. Astrue,* 2009 WL 700057, *6 (W.D.Ky. March 13, 2009) (citing *Thomas v. Secretary*, 928 F.2d 255, 260 (8th Cir., 1991)); See also *Ledford v. Astrue*, 311 Fed.Appx. 746, 757, 2008 WL 5351015, *10 (6th Cir. December 19, 2008) (citing *Martin v. Commissioner of Social Security*, 170 Fed.Appx. 369, 374–75, 2006 WL 509293 *5 (6th Cir. March 1, 2006)). Because Plaintiff has provided no reason for the tardy submission and clearly offered this material as a rebuttal to the ALJ's finding, he is not entitled to remand.

Further, Plaintiff cannot show that the new record is "material" to the ALJ's findings. To show that the newer evidence is material, Plaintiff "must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence" See *Sizemore v. Secretary of Health &*

*Human Services*, 865 F.2d 709, 711 (6th Cir.1988). First, the newer record states only that Plaintiff should elevate his feet while sitting. The one-time recommendation to elevate the feet does not establish the need for such restrictions on a long-term basis and would not be likely to change the ALJ's finding that the edema was not chronic (Tr. 28).

Second, the terse recommendation to elevate the feet does not state how high the feet should be elevated. I note that the VE testified that an employer would customarily allow an employee to elevate his feet six to eight inches while sitting (Tr. 77). The June 4, 2012 record does not state the degree to which Plaintiff's feet should be elevated and none of the other records support the conclusion that he would be required to elevate his feet higher than six to eight inches.[5]

### B. The Vocational Testimony

Plaintiff also contends that the hypothetical question to the VE did not contain all of the relevant limitations. *Plaintiff's Brief* at 4-5. He argues that while the ALJ found the presence of moderate limitations in concentration, persistence, or pace ("CPP"), the question to the VE did not reflect such limitations. *Id.* (citing Tr. 24, 73-74). He contends that as a result, the VE's corresponding job findings do not constitute substantial evidence. *Id.* In his response to Defendant's motion, Plaintiff cites *Ealy v. Commissioner,* 594 F.3d 504 (6th Cir. 2010)for the same proposition. *Plaintiff's Response* at 1, *Docket #12.* He contends that "there is no foundation for the vocational expert's testimony." *Id.*

---

[5] Further, Plaintiff's argument that "there [is] no opinion evidence" rebutting the alleged need to recline for long periods, *Plaintiff's Brief* at 3, misstates the applicable law which requires the claimant to "furnish medical and other evidence" to be used "to reach conclusions about [the] medical impairment(s) and their effect on his "ability to work on a sustained basis." 20 C.F.R. § 404.1512(a)); see also *Cranfield v. Commissioner, Social Security,* 79 Fed.Appx. 852, 858, 2003 WL 22506409 *5 (6th Cir. November 3, 2003).

Plaintiff's argument is not well taken. The question to VE (also forming the basis for the RFC) addressed his moderate limitation in CPP by limiting him to "simple, routine, repetitive tasks performed in a work environment free of fast-paced production requirements involving only simple work-related decisions and routine workplace changes" (Tr. 74). Standing alone, the hypothetical modifiers of "simple routine, and repetitive," are not inadequate to address moderate limitations in CCP. *Smith-Johnson v. Commissioner of Social Sec.,* — Fed. Appx. —, 2014 WL 4400999, *10 (6th Cir. September 8, 2014)(distinguishing *Ealy, supra*). Plaintiff has provided no reason why these descriptives are inadequate to address his limitations. Likewise, a number of courts in the district have found the terms simple, routine, and unskilled sufficient to account for the claimant's moderate concentrational limitations. *See Lewicki v. Commissioner of Social Security*, 2010 WL 3905375, *2 (E.D. Mich. Sept. 30, 2010)(the modifiers of "simple routine work" adequately accounted for the claimant's moderate deficiencies in CPP); *see also Schalk v. Commissioner of Social Sec.*, 2011 WL 4406824, *11 (E.D.Mich. August 30, 2011)("no bright-line rule" that moderate concentrational deficiencies require the inclusion of certain hypothetical limitations)(citing *Hess v. Comm'r of Soc. Sec.,* No. 07–13138, 2008 WL 2478325, *7 (E.D.Mich. June 16, 2008).

While Plaintiff seems to rely on *Ealy v. Commissioner,* 594 F.3d 504 (6th Cir. 2010) to support his argument that the hypothetical did not address his full degree of concentrational limitation, *Ealy* does not hold that the terms "simple, repetitive, routine" or similar descriptives are intrinsically inadequate to address moderate CPP deficiencies. Rather, the *Ealy* Court determined that the hypothetical limitations of "simple, repetitive" (drawn from a non-examining medical source) impermissibly truncated the source's conclusion that the claimant should be limited to "simple repetitive tasks to '[two-hour]

segments over an eight-hour day where speed was not critical.'" *Id.,* 594 F.3d at 516. Because here, the ALJ's choice of hypothetical limitations did not reflect a distorted or incomplete reading of the limitations, *Ealy* is inapplicable. See *Smith-Johnson, supra,* at *10.

Further, the ALJ was not required include the phrase "moderate limitations in concentration, persistence, or pace" in the question to the VE. While "[t]he hypothetical question ... should include an accurate portrayal of [a claimant's] individual physical and mental impairments," it need not contain a laundry list of all of his particularized conditions. *Webb v. Commissioner of Social Sec.,* 368 F.3d 629, 632 (6th Cir .2004) (citing *Varley v. Commissioner of Social Sec.*, 820 F.2d 777, 779 (6th Cir.1987)). Likewise, the ALJ did not err by excluding a number of Plaintiff's professed but unsupported limitations from the hypothetical question. *Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 118–119 (6th Cir.1994)(ALJ not obliged to include discredited allegations in the question to the VE).

My recommendation to uphold the Commissioner's decision should not be read to trivialize Plaintiff's limitations as a result of degenerative disc disease. However, because the decision that Plaintiff was not disabled falls within the "zone of choice" accorded to the fact-finder at the administrative hearing level, it should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days

of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                            s/R. Steven Whalen
                                            R. STEVEN WHALEN
                                            UNITED STATES MAGISTRATE JUDGE

Date: September 30, 2014

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on September 30, 2014, electronically and/or by U.S. mail.

                                            s/Carolyn M. Ciesla
                                            Case Manager to the
                                            Honorable R. Steven Whalen